O’Neall, J.
dissenting. In this case there seems to me to be no such legal offence as that charged to the slave. Insolence beyond all doubt is a violation of duty, which the social condition of the slave imposes upon him. But the Legislature have not thought proper to declare it to be a crime. Until they do so, I cannot, for one, consent, as a Magistrate, that legal punishment should be awarded.
The Act of 1740, in none of its provisions, has the slightest tendency towards the declaration of such an offence as that under consideration. The supposition that it may somehow be embraced in the provision that a slave who shall raise.or attempt to raise an insurrection, shall suffer death, is, it .seems to me, rather a far-fetched notion. Has insolence of language any thing to do with raising or attempting to raise an insurrection ? Some of the most faithful and devoted slaves have" been remarkable for their liberty of speech. Indeed, insolence is but another term for sauciness, and who' *47 has ever dreamed that an open-mouthed, saucy negro, is the deep intriguer calculated to raise, or attempt to raise, an insurrection ?
In none of our subsequent legislation is there any glancing at such a criminal offence as insolence. I presume that the Legislature have always acted on the beliei, which they disclosed in a recent Act, that any white person receiving insolence from a slave, could lawfully correct it, without any appeal to the form of law.
It is true, there is a dictum, in an old case, White v. Chambers, 2d Bay, 70, that for insolence on the part of a slave, if the master will not afford relief, the party aggrieved may carry the complaint before a Magistrate, and thus obtain redress. But certainly it is a great deal worse than Bench legislation, about which we hear so much, and I may be permitted to say, unfounded clamor, to adopt a mere dictum, and possibly that only the merely expressed notion of the good and venerable Reporter, as the foundation of a new and criminal law. For that case was brought for beating the slave, and the defence unsuccessfully attempted to be set up was insolence.
It is also said, that it is the practice of the whole State to try slaves for insolence before a magistrate and free-holders. If it be so, I am wholly ignorant of it. I have been tolerably familiar with the administration of justice in this State, for the last 33 years, and this is the first case which I have ever met with.
There is, however, another objection to this proceeding, which I will state. A free negro must be just as liable to be tried for insolence as a slave — yet this Court, in the State v. Fisher, MS. Session cases 121, with the assent of every member then belonging to it (except myself), declared that insolence, on the part of a free negro, would not justify a white man in striking ! If that be law, how can a Court venture to say that insolence on the part of a free negro is a crime ? No distinction does or can exist as to offences between slaves and free negroes.
But I place my dissent on a still broader ground: no jurisdiction ever did exist, which is liable to more abuse than that exercised by Magistrates over slaves. Clothe them with the power to try slaves for insolence, and the result will be that passion, prejudice and ignorance will crowd abuses on this inferior jurisdiction to an extent not to be tolerated by slave owners.